FILED by \_\_PG\_\_ D.C.

JUN 05 2018

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S. D. of FLA. – MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

JONELLE CRAGG,

      Plaintiff,                                                    (Jury Trial Demanded)

v.

THE DISTRICT BOARD OF TRUSTEES OF
MIAMI-DADE COLLEGE,

      Defendant.
_____/

## AMENDED COMPLAINT

Plaintiff, JONELLE CRAGG ("Ms. Cragg"), by and through her former undersigned counsel, improperly filed this complaint against Defendant, THE BOARD OF TRUSTEES OF MIAMI-DADE COLLEGE (the "MDC Board of Trustees"). Ms. Cragg, properly files this complaint against Defendant, THE DISTRICT BOARD OF TRUSTEES OF MIAMI-DADE COLLEGE, and alleges as follows:

### Preliminary Statement

1. During her final year as a student at Miami-Dade College ("MDC"), Ms. Cragg was wrongfully expelled, barred from attending school functions or registering for classes, and forced to undergo a psychological evaluation and attend therapy meetings as a condition to completing her studies and graduating from MDC.

2. Plaintiff challenges this expulsion and discrimination as an unlawful deprivation of her civil rights under both the Americans with Disabilities Act (the "ADA") and the Florida Civil Rights Act (the "FCRA").

### Parties

3. Ms. Cragg, is a former MDC student and currently a resident of Nevada.

4.  The MDC District Board of Trustees is the corporate body that controls and governs MDC.

5.  MDC is a state college and educational institution as defined in Section 1000.21, Florida Statutes and part of the Florida College System as defined in Section 1001.60(2), Florida Statutes. MDC is located in Miami-Dade County, Florida.

## Jurisdiction and Venue

6.  This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331, because this Complaint raises a federal question under the ADA, 42 U.S.C. § 12131 et. seq. This Court has jurisdiction of state law claims under 28 U.S.C. § 1367.

## Factual Allegations

7.  Ms. Cragg attended MDC from 2011 to 2014.

8.  During her first three years as an MDC student and up until the incidents described herein occurred, Ms. Cragg maintained a grade point average high enough to place her on the honor roll and an unblemished disciplinary record at MDC.

9.  During her last year at MDC, Ms. Cragg began to experience harassment from security guards on the Hialeah Campus of MDC who, among other things, would follow her around, tell her she was "crazy" as she walked the halls between classes, and accuse her of various disruptions which could not be corroborated by Ms. Cragg's teachers or anyone else present.

10. Ms. Cragg eventually submitted two complaints to administrators, including Mrs. Bradley-Hess who was the Dean of Students at the Hialeah Campus, regarding a series of incidents that took place during this time.

11. On or about April 30, 2014, Ms. Cragg met with Dean Bradley-Hess who told her that, because of two supposed incidents at the Hialeah Campus related to her complaints, MDC would be placing a hold on Ms. Cragg's college enrollment and records, she would not be allowed to graduate in May, 2014 and that Ms. Cragg would no longer be allowed to attend any MDC functions until she underwent a psychological evaluation.

12. On May 6, 2014, Ms. Cragg met with Dr. Bird-Arizmendi, Dean of Students at the Wolfson Campus of MDC, to discuss her previous meeting with Dean Bradley-Hess. At that time, Ms. Cragg became aware that she had already been expelled by Dean Bradley-Hess from all eight MDC campuses on April 30, 2014.

13. Ms. Cragg never received any written notice of disciplinary charges, was never given a hearing on any charges, and to her knowledge, no investigation was ever conducted into any charges prior to the imposition of disciplinary sanctions against her.

14. Instead, Ms. Cragg was told at that time that in order to complete the courses she needed to earn her degree, she would have to agree to disciplinary probation and meet certain conditions for re-enrollment as a student at MDC.

15. In addition, Ms. Cragg was told that MDC had scheduled her for psychological evaluation as one condition for her re-enrollment. Further, that she would only have summer classes added back to her schedule if the psychologist whom MDC had directed her to see for her evaluation felt that she should be re-enrolled.

16. As another condition to re-enrollment, Ms. Cragg was required to attend weekly therapy meetings.

17. By this time, Ms. Cragg had already planned to move to Nevada following graduation and could not delay her graduation any longer. Despite having significant concerns about the terms imposed by MDC for her re-enrollment, and despite having spiritual objections to

the mandated psychological evaluation and therapy sessions, Ms. Cragg met all of the conditions unilaterally imposed on her by MDC's administrators in an effort to complete her studies and graduate.

18. Although Ms. Cragg felt that she had no alternative but to comply with the terms imposed by MDC, during this time she also arranged various meetings with school officials, repeatedly inquired into the cause of her dismissal, and asked to see written notice of the charges against her. In these various meetings and through subsequent e-mails, Ms. Cragg requested a copy of the formal dismissal letter issued by MDC and repeatedly asked to see a copy of the incident reports which MDC was relying upon to justify her expulsion, require a psychological evaluation and mandate that she attend therapy sessions.

19. Despite several requests, Ms. Cragg was not given a copy of the records she requested or the incident reports MDC used against her. MDC also refused to give her a copy of the formal letter of dismissal.

20. Ms. Cragg later learned that, soon after these incidents, Dr. Bird-Arizmendi was fired by MDC. Ms. Cragg also learned that no formal letter of dismissal had ever actually been issued, despite MDC having dismissed Ms. Cragg from all eight campuses.

21. Ms. Cragg was treated unfairly by MDC. Similarly situated students at MDC, whether suspected of having psychological problems or cited for disciplinary issues, are granted basic due process and afforded the rights laid out in MDC's Students Rights and Responsibilities Handbook. Ms. Cragg was not afforded theses basic rights of due process or even given notice of the charges made against her. By doing so, MDC breached its own Educational Contract.

22. Despite her objections, Ms. Cragg complied with the conditions imposed upon her for re-enrollment, and completed her studies, earning a Bachelor's Degree in Supervision and Management.

23. Plaintiff made every attempt to exhaust the available remedies through MDC by scheduling meetings with college administrators and requesting incident reports, formal dismissal letters, and disciplinary records in order to dispute the charges. In violation of MDC's own Students Rights and Responsibilities Handbook, MDC never provided these records to Ms. Cragg and thereby denied her any means to dispute her wrongful expulsion and discriminatory treatment.

24. The ordeal that Ms. Cragg was put through by MDC was embarrassing, humiliating, and caused Plaintiff to endure pain, suffering, emotional distress, mental anguish, loss of enjoyment of life, inconvenience, embarrassment, humiliation, and injury to her reputation.

25. Plaintiff filed a timely charge of discrimination with the Florida Department of Education.

26. Plaintiff's Complaint was filed within the statutory time limits permitted for filing this cause of action.

### Count 1
### Discrimination in Violation of the
### Americans with Disabilities Act

27. Plaintiff adopts, re-alleges and incorporates herein each and every allegation contained in Paragraphs 1 through 26 above.

28. Plaintiff was at all material times hereto, regarded by MDC as having a disability as described in the ADA, 42 U.S.C. § 12111, et seq., and treated by MDC as though she had a disability which caused mental or psychological impairments that substantially limited major life activities, including her ability to attend classes and MDC functions.

29. Defendant MDC and its faculty regarded Plaintiff as having a disability as demonstrated by their refusal to allow Ms. Cragg to attend her classes or MDC functions without psychological evaluation, clearance from a psychologist, and weekly therapy meetings.

30. Ms. Cragg's academic and disciplinary records at MDC demonstrate that she was a qualified individual under the ADA and was, at all material times herein, qualified to be a student and attend classes at MDC.

31. MDC discriminated against Ms. Cragg by wrongfully disciplining her and expelling her from MDC and thereby not allowing her to attend classes or even be present on campus or at MDC functions.

32. MDC also discriminated against Ms. Cragg by wrongfully imposing improper and unwarranted conditions upon her ability to attend class and to graduate from MDC.

33. By the actions complained of herein, MDC unlawfully expelled and discriminated against Plaintiff in violation of 42 U.S.C. § 12132.

34. As a proximate result of MDC's wrongful conduct, Plaintiff has suffered and continues to suffer pain and suffering, emotional distress, mental anguish, loss of enjoyment of life, inconvenience, embarrassment, humiliation, injury to reputation and is entitled to damages.

35. MDC's conduct was willful, malicious and oppressive. MDC and its agents, employees or supervisors authorized, condoned, and ratified the unlawful conduct of each other. Consequently, Plaintiff is entitled to punitive damages in an amount to be shown.

36. Plaintiff is entitled to an award of court costs and reasonable attorney fees pursuant to 42 U.S.C. §§ 794a and 12133.

WHEREFORE, Plaintiff, Jonelle Cragg, prays for judgment against Defendant, the Board of Trustees of Miami-Dade College.

### Count 2
### Discrimination in Violation of the
### Florida Civil Rights Act

37. Plaintiff adopts, re-alleges and incorporates herein each and every allegation contained in Paragraphs 1 through 26 above.

38. Plaintiff was at all material times hereto, regarded by MDC as having a disability as described in the FCRA, Fla. Stat. § 760.01, et seq., and treated by MDC as though she had a disability which caused mental and psychological impairments that substantially limited major life activities, including her ability to attend classes and MDC functions.

39. Defendant MDC and its faculty regarded Plaintiff as having a disability as demonstrated by their refusal to allow Ms. Cragg to attend her classes or MDC functions without a psychological evaluation, clearance from a psychologist, and weekly therapy meetings.

40. Ms. Cragg's academic and disciplinary records at MDC demonstrate that she was a qualified individual under the FCRA and was, at all material times herein, qualified to be a student and attend classes at MDC.

41. MDC discriminated against Ms. Cragg by expelling her from MDC and thereby not allowing her to attend classes or even be present on campus or at MDC functions.

42. MDC also discriminated against Ms. Cragg by wrongfully imposing improper and unwarranted conditions upon her ability to attend class and to graduate from MDC.

43. By the actions complained of herein, MDC unlawfully expelled and discriminated against Plaintiff in violation of Fla. Stat. § 760.01, et seq.

44. As a proximate result of MDC's wrongful conduct, Plaintiff has suffered and continues to suffer pain and suffering, emotional distress, mental anguish, loss of enjoyment of life, inconvenience, embarrassment, humiliation, injury to reputation and is entitled to damages.

45. MDC's conduct was willful, malicious and oppressive. MDC and its agents, employees or supervisors authorized, condoned, and ratified the unlawful conduct of each other. Consequently, Plaintiff is entitled to punitive damages in an amount to be shown.

WHEREFORE, Plaintiff, Jonelle Cragg, prays for judgment against Defendant, the Board of Trustees of Miami-Dade College.

## Jury Trial Demand

Plaintiff demands a jury trial of all issues so triable.

Defendant's counsel does not oppose this motion.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served by E-mail on June 4, 2018, to Suzanne A. Singer, Esq., ssinger@rumberger.com; and Stella S. Chu, Esq., schu@rumberger.com, Rumberger, Kirk & Caldwell, P.A., counsel for Defendant.

Respectfully submitted,

*Jonelle Cragg*
JONELLE CRAGG
jonellecragg@rocketmail.com
7230 Las Vegas Blvd. South, Apt. C224
Las Vegas, Nevada, 89119
Telephone: (702) 807-6325

*Plaintiff*



**FedEx Office**

**Fax Cover Sheet**

Date: 06/04/2018

Number of pages: 9 (including cover page)

**To:**
Name: The United States District Court
Company: Southern Florida
Telephone: (305) 523-5100
Fax:

**From:**
Name: Jenelle Cragg
Company: Plaintiff
Telephone: (702) 807-6325

Comments: Amended JC Complaint (Amended Complaint 8 pages total)

fedex.com 1.800.GoFedEx 1.800.463.3339
© 2015 FedEx. All rights reserved. Products, services and hours vary by location. 615.0P00.002

